**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TAMMY L. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV117 |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tammy L. Nelson, brought this action pursuant to
Sections 205(g) and 1631(c)(3) of the Social Security Act (the
"Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain
judicial review of a final decision of the Commissioner of Social
Security denying her claims for Disability Insurance Benefits and
Supplemental Security Income under, respectively, Titles II and XVI
of the Act.  The parties have filed cross-motions for judgment and
the Court has before it the certified administrative record.  For
the reasons that follow, the Court should remand this case for
further proceedings regarding whether Plaintiff has deficits in
adaptive functioning that satisfy the disability listing in 20
C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

### PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits
and Supplemental Security Income on December 17, 2003 (protective
filing date November 26, 2003), alleging a disability onset date of

October 30, 2003. (Tr. 75-78).[1] Her applications were denied initially and upon reconsideration. (Tr. 55, 62.) Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 65), which she attended on October 4, 2005, with her attorney and an impartial vocational expert ("VE") (Tr. 16). The ALJ determined that Plaintiff was not disabled within the meaning of the Act (Tr. 28), but, on September 25, 2006, the Appeals Council remanded the case for a new hearing (Tr. 16). Following Plaintiff's second hearing, held March 13, 2008, the ALJ issued another decision finding no disability. (Tr. 16-28.) On December 23, 2008, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion Defendant's final decision for purposes of judicial review. (Tr. 8.)

In rendering her disability determination, the ALJ made the following findings (later adopted by Defendant):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> 2. The claimant has not engaged in substantial gainful activity since October 30, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic low back pain secondary to disc protrusion at L2-L3; borderline intellectual functioning; irritable bowel syndrome; gastroesophageal reflux disease; mood disorder; and history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .

---

[1] Transcript citations refer to the administrative record.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she needs the ability to alternate sitting/standing at her own option in ½ hour increments. She is limited to occasional stooping. She should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. She should avoid concentrated exposure to working at unprotected heights, around dangerous machinery or driving automotive equipment. She is unable to follow detailed instruction and unable to work at productive rate. She is limited to simple routine, repetitive tasks in a low stress setting with limited contact with co-workers and the public.

(Tr. 18, 22-24.)

In light of the foregoing findings regarding residual functional capacity ("RFC"), the ALJ determined that Plaintiff could not perform her past work. (Tr. 26-27.) Based on relevant considerations, including Plaintiff's RFC and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 23 (citing 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 416.966).) Accordingly, the ALJ ruled that Plaintiff did not have a "disability," as defined in the Act, from her alleged onset date of October 30, 2003, through the date of the decision. (Tr. 28.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [this] review . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks

-4-

omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating long-standing medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' ['SEP'] to determine whether a claimant is disabled." Id. (internal citations omitted).

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

This SEP has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the [RFC] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (1999).[3] A finding adverse to the claimant at any of several points along the SEP ends the inquiry and results in a determination that the claimant has no disability. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[4] Step four

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-
(continued...)

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, where the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## Assignment of Error

In this appeal, Plaintiff claims that the ALJ reversibly erred at step three of the SEP by failing to find that Plaintiff met the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C

---

[4](...continued)
related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first requires resolution of steps one, two, and three in the claimant's favor, whereas, on the second, the claimant must prevail at steps one, two, four, and five. Some short-hand characterizations of the SEP appear to gloss over the fact that a finding against a claimant on step three does not end the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the [SEP], review does not proceed to the next step.").

("Listing 12.05C") (and thus that she qualified as disabled). (<u>See</u>
Docket Entry 13 at 3-10.)  Listing 12.05C states as follows:

> Mental retardation refers to <u>significantly subaverage</u>
> <u>general intellectual functioning with deficits in</u>
> <u>adaptive functioning initially manifesting during the</u>
> <u>developmental period</u>; i.e., the evidence demonstrates or
> supports onset of the impairment before age 22.
>
> The required level of severity for the disorder is met
> when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.  A <u>valid verbal, performance, or full scale IQ of 60</u>
> <u>through 70</u> and a <u>physical or other mental impairment</u>
> <u>imposing an additional and significant work-related</u>
> <u>limitation of function</u>[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).

In other words, Listing 12.05C requires:

1) "a showing of deficits in adaptive functioning initially
manifested during the developmental period; i.e., the evidence
demonstrates or supports onset of the impairment before age 22
(Prong 1)," <u>Hancock v. Astrue</u>, ___ F.3d ___, ___, 2012 WL 19731, at
*2 (4th Cir. 2012) (internal quotation marks omitted);

2) "a valid verbal, performance, or full scale IQ of 60
through 70 (Prong 2)," <u>id.</u> (internal quotation marks omitted); and

3) "a physical or other mental impairment imposing an
additional and significant work-related limitation of function
(Prong 3)," <u>id.</u> (internal quotation marks omitted).

The ALJ found that, although some of Plaintiff's IQ scores
fell "in the 70 and 80 range" (Tr. 23), Plaintiff "obtained a valid
Verbal IQ score of 68" (<u>id.</u>).  Plaintiff thus met Listing 12.05C's
Prong 2.  <u>See</u> <u>Hancock</u>, ___ F.3d at ___, 2012 WL 19731, at *2.

At step two of the SEP, the ALJ concluded that, in addition to an intellectual functioning impairment, Plaintiff had "the following severe impairments: chronic low back pain secondary to disc protrusion at L2-L3; . . . irritable bowel syndrome; gastroesophageal reflux disease; mood disorder; and history of substance abuse." (Tr. 18 (internal citations omitted).)[6] Moreover, in formulating Plaintiff's RFC for purposes of steps four and five of the SEP, the ALJ determined, based on Plaintiff's physical impairments, that Plaintiff had at least some work-related exertional limitations, i.e., restriction to "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she [also] needs the ability to alternate sitting/standing at her own option in ½ hour increments . . . [with only] occasional stooping" (Tr. 23). Defendant does not dispute that the foregoing findings satisfy the requirement in Prong 3 of Listing 12.05C of "a physical or other mental impairment imposing an additional and significant work-related limitation of function," Hancock, ___ F.3d at ___, 2012 WL 19731, at *2. (See Docket Entry 16 at 3-13.)[7]

The question here therefore becomes whether the ALJ reversibly erred by failing to find that Plaintiff carried her burden on Prong

---

[6] To satisfy the "severe impairment" requirement at step two of the SEP, the claimant must "have any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c) (emphasis added).

[7] Because Defendant's brief contains a pagination error (i.e., its second page bears page number "3," its third page bears page number "2," its fourth page bears number "3," and each succeeding page bears a number one less than it should), citations to said brief refer to the page number in the CM/ECF footer.

1 of Listing 12.05C, i.e., to show "deficits in adaptive functioning initially manifested during the developmental period," Hancock, ___ F.3d at ___, 2012 WL 19731, at *2. Regarding this "adaptive functioning" requirement, the ALJ concluded thusly: "As [Plaintiff] has not exhibited significant deficits in her ability to work, maintain a household, or participate in her community, the evidence fails to establish the adaptive functioning deficits manifested during the development years . . . ." (Tr. 23.) To support this conclusion, the ALJ identified the following facts:

> The records show [Plaintiff] worked consistently for more than 11½ years with the same employer and stopped work when the plant closed. She performed semi-skilled work. [Plaintiff] moved in with her grandmother because she could no longer afford to pay for her apartment rent. She <u>was able to live alone, drive a car, attend church, grocery shop and do light house work</u>. Therefore, [Plaintiff's] higher IQ scores [i.e., her IQ scores in the 70 and 80 range, rather than her valid Verbal IQ score of 68] are a valid reflection of her overall functioning abilities.

(Tr. 23 (emphasis added).)[8]

_____

[8] Nothing in the ALJ's decision on this point thus turns on the aspect of Prong 1 of Listing 12.05C that requires manifestation of a claimant's deficits in adaptive functioning "during the developmental period." Moreover, Defendant acknowledges that Plaintiff provided testimony regarding her schooling that supports the view that such deficits surfaced before she turned 22. (See Docket Entry 16 at 7.) Defendant, however, cites page 25 of the administrative record as purportedly containing the ALJ's statement, "consistent with her role as fact-finder, declin[ing] to credit Plaintiff's self-serving testimony as to her academic functioning." (Id.) A review of that cited page (which falls in the section of the ALJ's decision addressing Plaintiff's RFC, rather than the section of the decision reviewing Plaintiff's ability to satisfy a disability listing) does not support this contention. (See Tr. 25.) Further, the Fourth Circuit has taken the position that a claimant's "low IQ manifested itself in deficits in [the claimant's] adaptive behavior before age 22 . . . [where] there is no evidence that [the claimant's] IQ had changed, and [there is] evidence that [the claimant] could barely read or write . . . ." Luckey v. United States Dep't of Health & Human Servs., 890 F.2d 666, 668 (4th Cir. 1989). Defendant has
(continued...)

-10-

Notwithstanding the ALJ's foregoing conclusion that Plaintiff had no "<u>significant</u> deficits in her ability to . . . maintain a household, or participate in her community" (Tr. 23 (emphasis added)), the ALJ ruled (as part of the analysis of Listing 12.05D) that, "[i]n activities of daily living, [Plaintiff] has <u>moderate</u> restriction" (Tr. 22 (emphasis added)) and that, "[i]n social functioning, [Plaintiff] has <u>moderate</u> difficulties" (<u>id.</u> (emphasis added)).[9]    Adjacent to the conclusion regarding Plaintiff's

_____

[8](...continued)
identified no evidence of any change in Plaintiff's IQ since she turned 22 (<u>see</u> Docket Entry 16 at 3-13) and the record reflects that Plaintiff reads at only a fourth-grade level (Tr. 21-22).   The Court thus should reject Defendant's arguments for affirmance based on an alleged failure of proof as to the "onset" issue.   In sum, "[t]here may be evidence from which to find that the onset of [Plaintiff's] mental impairment was not manifest before age twenty-two; however, the ALJ cites none." <u>Radford v. Astrue</u>, No. 5:08CV421FL, 2009 WL 1675958, at *7 (E.D.N.C. June 10, 2009) (unpublished).   The ALJ would remain free to address this issue on remand. <u>See</u> <u>Markle v. Barnhart</u>, 324 F.3d 182, 189 (3d Cir. 2003) (ruling that, on remand in a case in which ALJ failed to base decision on "onset" requirement, ALJ "can provide his interpretation of the record on this issue, develop the record further, and make a finding whether [the claimant's] . . . retardation commenced before age 22").

[9] According to the general Mental Disorders Listing:

Social functioning refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.   Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers.   [A claimant] may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. [A claimant] may exhibit strength in social functioning by such things as [the] ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. . . . Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(C)(2).

"moderate restriction" in the conduct of "daily living" activities, the ALJ cited, but did not expressly address, the apparent evidentiary conflict between the report of Plaintiff's sister that Plaintiff "has no problems with . . . meal preparation . . . [and] is able to . . . handle money" (Tr. 22) and Plaintiff's statement that she would "<u>occasionally</u> go to the grocery store and cook <u>with her grandmother's supervision</u>" (<u>id.</u> (emphasis added)).[10] As support for the conclusion that Plaintiff had "moderate difficulties" with "social functioning," the ALJ noted that Plaintiff's sister "reported that [Plaintiff] gets along with family and friends" (<u>id.</u>) and that Plaintiff stated "she occasionally goes to church, but only rarely socializes otherwise" (<u>id.</u>).

Plaintiff challenges the ALJ's method of analysis, as well as the sufficiency of the evidence, underlying the ALJ's conclusion that Plaintiff did not satisfy the "adaptive functioning" requirement of Prong 1 of Listing 12.05C. (<u>See</u> Docket Entry 13 at 6-9.) On the first of these points, Plaintiff complains that, to assess adaptive functioning, "the ALJ essentially used an *ad hoc* method which she created," rather than "one of the measurement methods recognized and endorsed by [an established mental health organization]." (<u>Id.</u> at 6.) On the second point, Plaintiff argues that "most of the statements made by the ALJ regarding the

_____

[10] Plaintiff testified that she seldom, if ever, went to the grocery store alone, as she lacked proficiency in selecting needed items. (Tr. 532.) Plaintiff's testimony further indicates that she has never had a bank account and that first her friend and then her grandmother handled bill payment (with Plaintiff contributing a portion in cash). (Tr. 524-27, 531-32.)

Plaintiff's functioning are simply incorrect and contradicted by the evidence in the record." (Id. at 7.)

As courts have recognized, Prong 1 of Listing 12.05C "does not expressly define 'deficits in adaptive functioning' . . . [but] '[a]daptive activities' are described elsewhere in the [Mental Disorders] Listing . . . as '<u>cleaning</u>, <u>shopping</u>, <u>cooking</u>, taking public transportation, paying bills, <u>maintaining a residence</u>, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" <u>Blancas v. Astrue</u>, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05 and 12.00(C)(1)) (emphasis added); <u>accord</u> <u>Hager v. Astrue</u>, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W. Va. Mar. 31, 2011) (unpublished). Further, although Listing 12.05C "requires 'deficits' in adaptive functioning, it does not specify what degree of deficit is required (mild versus [moderate], for example), whether deficits must exist in one, two, or more categories of adaptive functioning, or what methodology should be used to measure deficits in adaptive functioning." <u>Blancas</u>, 690 F. Supp. 2d at 477.[11]

---

[11] Other portions of the Social Security Administration's regulations related to analysis of how mental impairments affect "functional areas," such as "daily living" activities and "social functioning," use this "five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). Because Prong 1 of Listing 12.05C also applies to the other alternative listings within the broader Mental Retardation Listing, i.e., Listings 12.05A, 12.05B, and 12.05D, "the deficits necessary to satisfy [Prong 1] would appear to be less than the [Prong 3] criteria of Listing 12.05D, which requires 'marked' restriction of activities of daily living and social functioning." <u>Blancas</u>, 690 F. Supp. 2d at 477. Any other interpretation might reduce Prong 3 of Listing 12.05D to a nullity, something courts generally must avoid. <u>See</u> <u>Scott v. United States</u>, 328

(continued...)

In fact, in revising the Listings, the Social Security Administration ("SSA") specifically chose not to address such matters in a definitive way:

> "The definition of MR [i.e., mental retardation] we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations."

> . . . .

> "The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, nor does it seek to endorse the methodology of one professional organization over another. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits. SSA's definition establishes the necessary elements, while allowing use of any of the measurement methods recognized and endorsed by the professional organizations."

Id. at 477-78 (quoting Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (Apr. 24, 2002)) (internal italics omitted) (emphasis added).)

According to Plaintiff, in the above-quoted administrative guidance, the SSA "instructed [ALJs] to choose and apply one of the measurement methods recognized and endorsed by one of the [referenced] professional organizations[.]" (Docket Entry 13 at 6 (citing 67 Fed. Reg. at 20002).) By so arguing, Plaintiff

[11](...continued)
F.3d 132, 139 (4th Cir. 2003) ("Where possible, we must . . . avoid any interpretation that may render statutory terms meaningless or superfluous.").

improperly seeks to substitute the word "requiring" for the word "allowing" in the phrase "allowing use of any of the measurement methods recognized and endorsed by the professional organizations," 67 Fed. Reg. at 20222. See Miller v. Astrue, No. 4:07CV2611, 2008 WL 8053474, at *7 n.10 (S.D. Tex. Sept. 8, 2008) (unpublished). Moreover, by recently affirming an ALJ's finding of no deficits in adaptive functioning without considering the methodology of any professional organization, the Fourth Circuit clearly indicated that an ALJ may decide whether a claimant satisfies the "deficits in adaptive functioning" requirement of Prong 1 of Listing 12.05C without resorting to any professional organization's technical standards. See Hancock, ___ F.3d at ___, 2012 WL 19731, at *5.

More specifically, in Hancock:

> In finding no deficits in adaptive functioning generally, the ALJ concluded that 'the claimant has worked several jobs and performed a variety of tasks which would be expected to be beyond the capacity of a mentally retarded person.' With regard to past jobs, the ALJ found that [the claimant] previously worked as a battery assembler and a drop clipper. With regard to tasks, the ALJ noted that [the claimant] has the ability to shop, pay bills, and make change; that she takes care of three small grandchildren at a level of care that satisfies the Department of Social Services; that she does the majority of her household's chores, including cooking and baking; that she is attending school to obtain a GED; and that she does puzzles for entertainment.

Id. (internal citation and footnote omitted). The Fourth Circuit held that "this evidence was sufficient to support the ALJ's conclusion that [the claimant] had no deficits in adaptive functioning." Id. Indeed, the Fourth Circuit ruled that the evidence of "the various tasks that [the claimant] [wa]s able to

complete . . . alone[] amount[ed] to substantial evidence supporting the ALJ's decision." <u>Id.</u> at *5 n.3.[12]

Accordingly, the Fourth Circuit has established that, in general, an ALJ may find a claimant has failed to carry the burden of showing deficits in adaptive functioning, if the record contains substantial evidence that the claimant has the equivalent of the following characteristics:

1) "the ability to shop, pay bills, and make change," <u>id.</u> at *5;

2) "takes care of three small grandchildren at a level of care that satisfies the Department of Social Services," <u>id.</u>;

3) "does the majority of her household's chores, including cooking and baking," <u>id.</u>;

4) "is attending school to obtain a GED," <u>id.</u>; and

5) "does puzzles for entertainment," <u>id.</u>[13]

By comparison, in this case, the ALJ found that Plaintiff had these capabilities:

---

[12] The Fourth Circuit apparently focused on the non-work tasks performed by the claimant to avoid resolving the parties' dispute over the skill-level involved in the claimant's prior work. <u>See</u> <u>Hancock</u>, ___ F.3d at ___, 2012 WL 19731, at *6 n.3. The instant appeal involves a similar dispute over the significance of Plaintiff's prior work in connection with the assessment of her adaptive functioning. (<u>See</u> Docket Entry 13 at 8; Docket Entry 16 at 8-9.)

[13] Although the Fourth Circuit found these characteristics <u>sufficient</u> to support a finding of an absence of deficits in adaptive functioning, the Fourth Circuit did not intimate that those (or comparable) capabilities constituted the minimum that would suffice or that substantially lesser showings would support such a finding. <u>See</u> <u>Hancock</u>, ___ F.3d at ___, 2012 WL 19731, at *5. Accordingly, although <u>Hancock</u> provides a valuable comparison standard for assessing an ALJ's findings regarding the adaptive functioning requirement, it does not identify an outer boundary in this context.

1) to "grocery shop" (Tr. 23);

2) "to live alone" (id.);

3) to "do light house work" (id.);

4) to "drive a car" (id.); and

5) to "attend church" (id.).[14]

On their face, these abilities attributed to Plaintiff by the ALJ appear slightly less advanced, but roughly comparable to, the characteristics the Fourth Circuit deemed sufficient to support a finding of "no deficits in adaptive functioning" in Hancock.[15] However, as Plaintiff has pointed out (Docket Entry 13 at 7) and Defendant has conceded (Docket Entry 16 at 9), the record, in fact, does not contain any evidence that Plaintiff ever actually has lived alone. Nor does the ALJ's decision explain how one could conclude that Plaintiff nonetheless had the capacity to do so. (See Tr. 23.) Moreover, as discussed above, supra, p. 12, the ALJ's decision does not reflect how the ALJ resolved the

---

[14] The ALJ also asserted that Plaintiff "ha[d] not exhibited significant deficits in her ability to . . . maintain a household, or participate in her community" (Tr. 23) but, given the level of generality of these statements and their qualified, negative-implication phrasing (i.e., focusing on the absence of evidence of "significant deficits" rather than on the presence of evidence of Plaintiff's actual capacity), said conclusory assertions fail to add anything meaningful to the substantial evidence analysis (or any comparison between this case and Hancock).

[15] For example, "the ability to shop, pay bills, and make change," Hancock, ___ F.3d at ___, 2012 WL 19731 at *5, generally equates to the ability to "grocery shop" (Tr. 23). Similarly, the demonstrated capacity to "take[] care of three small grandchildren at a level of care that satisfies the Department of Social Services" and to "do[] the majority of her household's chores, including cooking and baking," Hancock, ___ F.3d at ___, 2012 WL 19731 at *5, is comparable to (although somewhat more indicative of positive "adaptive functioning" than) a proven capacity "to live alone . . . and do light housework" (Tr. 23).

conflicting evidence as to whether Plaintiff could handle money sufficiently to shop for groceries (or to pay bills more generally) and as to whether Plaintiff could prepare meals independently (both of which skills she likely would have to possess in order to justify a finding that she could live alone).[16]

The foregoing considerations establish that the ALJ's decision fails to provide "'an accurate and logical bridge from the evidence to [the ALJ's] conclusions,'" <u>Joyce v. Astrue</u>, No. 1:06CV27, 2009 WL 313345, at *3 (M.D.N.C. Feb. 5, 2009) (unpublished) (quoting <u>Blakes ex rel. Wolfe v. Barnhardt</u>, 331 F.3d 565, 569 (7th Cir. 2003)). Moreover, the ALJ's determination that Plaintiff suffered from "moderate" impairment of her capacity for both "daily life" activities and "social functioning" (Tr. 22) appears, at least facially, in tension with the ALJ's separate conclusion that Plaintiff lacks "significant deficits in her ability to . . . maintain a household, or participate in her community" (Tr. 23).[17] The Court therefore should remand this case for further proceedings

---

[16] "The Social Security rulings require that an ALJ's decision 'contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" <u>Shaw v. Astrue</u>, No. 4:08CV132-D(2), 2009 WL 2486932, at *6 (E.D.N.C. Aug. 13, 2009) (unpublished) (quoting SSR 96-7p).

[17] In an admittedly different procedural context, another court in the Fourth Circuit recognized that an ALJ's determination that a claimant "ha[d] a moderate restriction in the activities of daily living . . . [and] moderate difficulties with concentration, persistence, or pace and social functioning . . . [indicated the existence of] a reasonable possibility that [the claimant] could meet [the adaptive functioning] prong of [Listing 12.05C]." <u>Hager</u>, 2011 WL 1299509, at *3 (internal quotation marks omitted).

regarding the adaptive functioning requirement in Prong 1 of Listing 12.05C. See generally Smith v. Heckler, 782 F.2d 1176, 1181 (4th Cir. 1986) (ordering remand where ALJ's decision "contains a gap in its reasoning"); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) ("We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.").[18]

On remand, the ALJ again may consider Plaintiff's prior work history in assessing whether Plaintiff has shown deficits in adaptive functioning. See, e.g., Cheatum v. Astrue, 388 Fed. Appx. 574, 576 n.3 (8th Cir. 2010) ("[E]vidence of [the claimant's] ability to perform gainful activity is not relevant if she otherwise meets the requirements of Listing 12.05. It is relevant,

_____

[18] Plaintiff contends that, "[i]n light of th[e] evidence[, she] should be found disabled and awarded benefits." (Docket Entry 13 at 10.) "Under Fourth Circuit precedent, reversal without remand is only appropriate where: (1) the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard; and (2) reopening the record for more evidence would serve no purpose." Jones ex rel. Jones v. Astrue, 704 F. Supp. 2d 522, 536 (D.S.C. 2010) (citing Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974)). Under the circumstances of this case, the Court cannot conclude that "the record as a whole indicates that [Plaintiff] was disabled . . . [or that] reopening the record would serve no purpose," id. Moreover, this case differs from others in which courts ordered the immediate award of benefits on the ground that "there [we]re no inconsistencies in the record and further development is not required regarding the claim," id. Indeed, as set forth above, see supra, pp. 12, 17-18, the instant record reveals unresolved conflicts in the evidence that the ALJ, not the Court, should address, at least initially. Further, the reopening of the record may well aid the decisional process. For example, the record reflects that the ALJ ordered Plaintiff's assessment by the Vineland Adaptive Behavioral Scales (a measurement that arguably could shed substantial light on the question of Plaintiff's level of adaptive functioning notwithstanding her diminished intellectual capacity), but that the testing administrator apparently instead gave Plaintiff the Woodcock-Johnson test (which may not have provided as broad a view of Plaintiff's adaptive functioning due to its cognitive focus). (See Tr. 400, 511.)

however, to whether she has shown the deficits in adaptive functioning necessary to meet that listing." (internal citations omitted)); Caldwell v. Astrue, No. 1:09CV233, 2011 WL 4945959, at *4 (W.D.N.C. Oct. 18, 2011) (unpublished) (distinguishing Luckey v. United States Dep't of Health & Human Servs., 890 F.2d 666, 669 (4th Cir. 1989), and Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987), and holding that "ALJ properly considered Plaintiff's prior work experience in the context of considering whether the Plaintiff met the first prong of [Listing 12.05C]").

"However, the fact that a claimant has been able to work in the past does not necessarily suggest that the claimant does not satisfy the deficits in adaptive functioning requirement. . . . 'Listing 12.05(C) assume[s] many, if not most, mildly mentally retarded individuals will be able to work . . . [but that they may] subsequently become disabled due to the development of additional severe impairments.'" Shaw v. Astrue, No. 4:08CV132-D(2), 2009 WL 2486932, at *6-7 (E.D.N.C. Aug. 13, 2009) (unpublished) (quoting Muntzert v. Astrue, 502 F. Supp. 2d 1148, 1158 (D. Kan. 2007)). The ALJ thus should take care not to place too much weight on Plaintiff's former work experience in reaching a conclusion, upon remand, as to whether Plaintiff can meet her burden of showing deficits in adaptive functioning as required by Prong 1 of Listing 12.05C. See Brooks v. Astrue, No. 2:10CV37D, 2011 WL 3882283, at *8 (E.D.N.C. Aug. 17, 2011) (unpublished), recommendation adopted, 2011 WL 3904104 (E.D.N.C. Sept. 2, 2011) (unpublished).

**IT IS THEREFORE RECOMMENDED** that Defendant's decision finding no disability be **REVERSED** and that the matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings, consistent with this Recommendation, to determine whether Plaintiff had deficits in adaptive functioning that satisfy the disability listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.  As a result, Defendant's motion for judgment on the pleadings (Docket Entry 15) should be **DENIED** and Plaintiff's motion for judgment reversing the Commissioner (Docket Entry 11) should be **GRANTED IN PART AND DENIED IN PART**, in that the Court should decline to enter an immediate award of benefits.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 3, 2012